IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

FELICIA MARTINEZ, *et al.*,            )
                                       )
        Plaintiffs,                    )
                                       )
        v.                             )        Case No. 1:06-cv-636-WKW [wo]
                                       )
TRACEY McCORD, *et al.*,               )
                                       )
        Defendants.                    )

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court is the Motion to Dismiss or in the Alternative for Summary Judgment
(Doc. # 62) filed by Deputy Sheriff Tracey McCord ("McCord") and the Motion to Dismiss
or in the Alternative for Summary Judgment (Doc. # 83) filed by Investigator Ronnie
Williamson ("Williamson").  The defendants are sued under 42 U.S.C. § 1983 in their
individual capacities only.

Both McCord and Williamson argue they are entitled to qualified immunity for the
federal law claims.  McCord argues he is entitled to state immunity for the state law claims
because he is an officer of the state who was performing his duty.  Williamson, on the other
hand, argues he is entitled to State-agent immunity for the state law claims because he was
acting as a peace office in the performance of his duties.  Upon careful review of the
briefings and submissions of the parties, McCord and Williamson's alternative motions for
summary judgment are due to be granted in part and denied in part for the reasons set forth

below.[1]

# I. FACTS AND PROCEDURAL HISTORY

This case arises out of searches of two mobile homes for methamphetamine, currency, and drug paraphernalia under a Houston County, Alabama search warrant dated January 17, 2006.  (Doc. # 84-3.)  One of the mobile homes was occupied by Plaintiffs Felicia Martinez ("Martinez") and her two minor children.  Prior to the searches, a formal briefing was given at the Houston County Sheriff's Office where Houston County, the lead agency of a multi-agency operation, explained the nature, scope, and plan for the searches.  (Whittle Decl. ¶ 5.) The briefing lasted approximately twenty to thirty minutes and was primarily conducted by McCord, the commander of the Houston County narcotics unit.  (*Id*.)  During the briefing, Deputy Flathmann stated that he had obtained search warrants for the two premises.[2] (Williamson Aff. ¶ 8.)  At the briefing it was explained that Oscar and Juvenal Martinez were known to frequent the mobile homes and use them in their narcotics operations, and both subjects were believed to be armed and dangerous.  (Whittle Aff. ¶¶ 6-8.)  Juvenal is the

---

[1]    Even though both defendants provide matters outside of the pleadings, the court need not convert the defendants' motions to dismiss under Rule 12(d) of the Federal Rules of Civil Procedure because the defendants filed summary judgment motions in the alternative. *Ventrassist Pty Ltd. v. Heartware, Inc.*, 377 F. Supp. 2d 1278, 1286 n.7 (S.D. Fla. 2005) (finding that converting a motion to dismiss would render the alternative motion for summary judgment superfluous).  Therefore, instead of converting the motions to dismiss, the court finds they are due to be denied.  The defendants' alternative motions for summary judgment will be considered instead, as urged by the plaintiffs.  (Pls.' Resp. Br. to McCord 1 n.1.)

[2]    The two warrants were for mobile homes at 43 Pitts Drive and 81 Pitts Drive to search for methamphetamine, currency, and drug related paraphernalia, seen in the possession of Juvenal Martinez by a reliable confidential informant.  (Doc. # 84-3.)

estranged husband of Martinez.  (Martinez Decl. ¶ 15.)

Martinez and her minor children, ages five and seven, were watching television at 7:00 p.m. when the Daleville Police Tactical Team, also known as the Special Weapons and Tactics ("SWAT") Team,[3] made an explosive entry into her home, located at 43 Pitts Drive, and secured the premises for the drug task force to conduct the search.  (Martinez Decl. ¶ 1; McCord Decl. at 3.)  During the initial entry to the home, a "flash-bomb" or other explosive device was thrown through the window, exploding in front of one of the children watching television.  (Martinez Decl. ¶ 2.)  Officers with masks, assault garb, and drawn weapons entered the mobile home by breaking down a door.[4]  (*Id*. ¶ 4.)  Weapons were pointed at Martinez and her minor children, and they were required to lie on the floor face-down and were not permitted to move.  (*Id*. ¶ 5.)  Other officers, also unidentified, made a coordinated and simultaneous entry into the other mobile home located nearby at 81 Pitts Drive. (McCord Decl. at 4.)

At the time of entry into Martinez's home, McCord was on duty watching the perimeter of the entry at 81 Pitts Drive.  (*Id*.)  At that same time, Williamson was waiting in a vehicle down the road.  (Williamson Aff. ¶ 9.)  After the premises of the mobile homes

---

[3] McCord claims that the SWAT team had its own chain of command and formulated its own plan for making the initial entries, that he had no personal involvement in the SWAT team's planning for their entry and securing of the site, and that he was not briefed on the SWAT team's operational plan for entering the mobile homes.  (McCord Decl. at 3-4.)

[4] Because discovery has yet to commence and the Magistrate Judge previously denied (Doc. # 51) opening limited discovery for this particular issue, the plaintiffs do not know the identity of the officers who conducted the initial entry and securement of their home (Doc. # 52).

were secured, Williamson entered the plaintiffs' residence and searched the kitchen, bedroom, and the laundry room for items pursuant to the warrant, (Williamson Aff. ¶¶ 10-12), and McCord entered the residence at 81 Pitts Drive where he spent over two hours searching for evidence and interviewing the individuals found inside. (McCord Decl. at 4-5.) Methamphetamine, currency, drug paraphernalia, and a handgun were seized at 81 Pitts Drive, and Juvenal Martinez was arrested.

McCord then walked the short distance to 43 Pitts Drive.  (McCord Decl. at 5.) Although McCord describes his entry of the plaintiffs' home as merely a "quick walk through" that lasted five to ten minutes, (McCord Decl. at 5), Martinez alleges that McCord and other officers involved in the search "look[ed] in every drawer in every room of her house," "tore the front off [her] VCR," and "caused damage to [her] car during the search." (Martinez Decl. ¶ 7.)  Martinez also claims McCord told her that she was going to jail.  (*Id.* ¶ 18.)  The actions of McCord and other officers "extremely distressed" Martinez and caused her to worry "that there was something in the explosive device that caused [her children] to sleep."  (*Id.*)

On July 18, 2006, the plaintiffs filed this action against multiple defendants, some of whom have already been dismissed as parties.  In their most recent complaint, the plaintiffs allege eleven counts against McCord and Williamson for unlawful entry, unlawful search and seizure, excessive force under 42 U.S.C. § 1983, conspiracy to violate her civil rights under 42 U.S.C. § 1985, failure to prevent the violation of her civil rights under 42 U.S.C. § 1986,

4

and six state tort claims.[5]  (Third Am. Compl. ¶¶ 43-120.)  On July 16, 2007, McCord filed

a motion to dismiss or in the alternative for summary judgment (Doc. # 62).  On October 19,

2007, Williamson filed a motion to dismiss or in the alternative for summary judgment

(Doc. # 83).   The plaintiffs have responded (Docs. # 70 & # 86) to both motions and both

defendants have replied (Docs. # 76 & # 88).

## II.  JURISDICTION AND VENUE

Because the action includes claims under 42 U.S.C. § 1983 (deprivation of rights),

42 U.S.C. § 1985 (conspiracy to interfere with rights), and 42 U.S.C. § 1986 (failure to

prevent conspiracy to interfere with rights), the court exercises jurisdiction pursuant to

28 U.S.C. § 1331 (federal question).  As to the claims arising under state law, the court

exercises supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  The parties do not contest

personal jurisdiction or venue, and the court finds there are allegations sufficient to support

both.

## III.  STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is

appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v.

Catrett*, 477 U.S. 317, 322 (1986).  The party asking for summary judgment "always bears

---

[5]  The plaintiffs now concede that their claims under 42 U.S.C. § 1985 and § 1986 against
McCord are due to be dismissed.  (Doc. # 70, at 20.)

5

the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id*. at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324. To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

# IV. DISCUSSION

## A.    *Rule 56(f)*

As an initial matter, the plaintiffs argue that Williamson's motion for summary judgment should be denied pursuant to Rule 56(f) because they have not had an opportunity to make full discovery.[6] (Pls.' Resp. Br. to Williamson 9-12.)  If the non-movant can show by affidavit that she cannot present essential facts, the court may deny the motion or order a continuance.  Fed. R. Civ. P. 56(f).  While generally a party adverse to summary judgment must set forth specific facts demonstrating a genuine issue for trial, this general rule is limited by "Rule 56(f)'s provision that summary judgment be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Anderson*, 477 U.S. at 250 n.5.  The Eleventh Circuit "has often noted that summary judgment should not be granted until the party opposing the motion has had an adequate opportunity for discovery." *Snook v. Trust Co. of Ga. Bank of Savannah, N.A.*, 859 F.2d 865, 870 (11th Cir. 1988).  However, the court must balance the "demonstrated need for discovery against the burden such discovery will place on the opposing party." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1280 (11th Cir. 1998).

In this case, Williamson advances a qualified immunity defense which changes the normal Rule 56(f) analysis:

In qualified immunity cases, the Rule 56(f) balancing is done with a thumb on

---

[6] The plaintiffs do not make a Rule 56(f) argument or provide a necessary affidavit as to McCord's summary judgment motion.  (*See* Pls.' Resp. Br. to McCord.)

the side of the scale weighing against discovery.  Qualified immunity provides an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal [immunity] question.  For that reason, once a defendant raises the defense, "the trial court must exercise its discretion in a way that protects the substance of the qualified immunity defense.  It must exercise its discretion so that officials are not subjected to unnecessary and burdensome discovery or trial proceedings.

*Id.* (internal citations and quotation marks omitted).

Among the explanations provided by plaintiffs' counsel as to why further opportunity for discovery is warranted before final judgment is entered is the need to ascertain Williamson's "relationship to lower ranking officers at the scene to discover whether they acted under the scope of his authority." (Clements Decl. ¶ 5.)  Furthermore, statements made during the briefing may shed light on Williamson's role in the search.  (*Id.* ¶ 6.)  Other reasons proffered by the plaintiffs for denying summary judgment under Rule 56(f) are that Williamson did not specify exactly how he searched the home, *i.e.*, whether he "ransacked" it, and that discovery is needed to determine the policies regarding searches of homes.

In their complaint, the plaintiffs contend that Williamson, among others, converted or intermeddled with numerous items of furnishing, decor, and memorabilia, in addition to breaking a window and a door and causing other damage by use of an explosive device. (Third Am. Compl. ¶ 112.)  Although Williamson states that he did not damage any property, (Williamson Aff. ¶¶ 12-13), the plaintiff has alleged property damage arising from the search of her home.  (Martinez Decl. ¶ 7.)  It is undisputed that Williamson participated in the search of her home.  Assuming the plaintiffs' version of the facts to be true, further discovery

as to this issue is required to properly determine the validity of many of the claims alleged against Williamson, even in the face of qualified immunity.[7]  Therefore, upon consideration of the plaintiffs' arguments, the court finds that Rule 56(f) prevents the court from reaching a final judgment on the motion for summary judgment at this time with respect to Williamson, with the exception of certain claims specified below that fail as a matter of law.

**B.     *Qualified Immunity for Federal Claims – Counts One Through Three***

The first three counts of the plaintiffs' complaint allege violations of various constitutional rights under 42 U.S.C. § 1983: unlawful entry in violation of the Fourth and Fourteenth Amendments, unlawful search and seizure in violation of the Fourth and Fourteenth Amendments, and excessive force in violation of the Fourth Amendment.  (Third Am. Compl. ¶¶ 43-76.)  Both defendants claim qualified immunity against these counts.

Qualified immunity may protect government officials performing discretionary functions from being sued in their individual capacities.  *Williams v. Ala. State Univ.*, 102 F.3d 1179, 1182 (11th Cir. 1997).  It shields government actors from liability to the extent that "their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982).  "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law."

---

[7]  As explained below, some of the claims are defective even at this early stage and are due to be dismissed.

*Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks and citations omitted).

The qualified immunity defense involves a two-step inquiry. The first inquiry is "whether the defendant government official was performing a discretionary function" when the allegedly wrongful acts occurred. *Madiwale v. Savaiko*, 117 F.3d 1321, 1324 (11th Cir. 1997). The government actor is acting within his discretion if "his actions were undertaken pursuant to the performance of his duties and within the scope of his authority." *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988) (quoting *Barker v. Norman*, 651 F.2d 1107, 1121 (5th Cir. 1981)).

"Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee*, 284 F.3d at 1194. This is the second inquiry and is itself a two-part test. First, the court must determine whether the plaintiff's allegations, if taken as true, would establish a violation of a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If so, the "next, sequential step is to ask whether the right was clearly established." *Id*. For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

> When, as here, qualified immunity is asserted in the context of a motion for summary judgment, we look at the evidence in the record, interpreted in the light most favorable to the plaintiff. Based on this evidence, we must determine if there is a reasonable dispute of material fact over whether the

defendant violated the plaintiff's clearly established constitutional rights.

*O'Rourke v. Hayes*, 378 F.3d 1201, 1206 (11th Cir. 2004).

Here, there is no dispute that both McCord and Williamson were acting within their discretionary authority.  Therefore the court must now determine whether there is a genuine issue of material fact as to whether a constitutional right was violated and, if so, whether that right has been clearly established.

### 1.    McCord

Most of the alleged constitutional deprivations of which Martinez complains were personally committed by the members of the SWAT team who conducted the explosive, initial entry as part of a broader multi-agency operation led in part by McCord.  As a result, McCord is a supervisory official as to these claims.  Supervisory officials may be found liable, but "[t]he standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous."  *Braddy v. Fla. Dep't of Labor & Employment Sec.*, 133 F.3d 797, 802 (11th Cir. 1998).  Because "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates 'on the basis of *respondeat superior* or vicarious liability,'" *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (quoting *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994)), plaintiffs must seek a more direct manner of holding supervisors liable.  Two types of supervisory liability exist in the Eleventh Circuit.  The first type is "'when the supervisor personally participates in the alleged constitutional violation.'" *Id.* (quoting *Brown v. Crawford*, 906

F.2d 667, 671 (11th Cir. 1990)).  Because McCord did not personally participate in the explosive entry of the plaintiffs' home, the first type of supervisory liability is inapplicable to the excessive force claim.  However, he did personally participate in the later entry and search of the plaintiffs' home, allegedly caused damage to the plaintiffs' home and possessions, and allegedly told Martinez she was going to jail.  Therefore, he did personally participate as to Count One (unlawful entry) and Count Two (unlawful search and seizure), potentially giving rise to supervisory liability.

The second type of supervisory liability exists "when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." *Brown*, 906 F.2d at 671.  This "causal connection" may itself be established by three different methods.  The first way is "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so."  *Id.* These deprivations "must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences."  *Id.*  The second way is "where the supervisor's improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'"  *Hartley*, 193 F.3d at 1269 (quoting *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991)).  The third way is established by "facts which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so."  *Gonzalez v. Reno*, 325 F.3d 1228, 1235 (11th Cir. 2003) (citing *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1561 (11th Cir. 1993)).

Martinez does not allege there was a history of widespread abuse consisting of deprivations of a continued duration such that a causal connection could be made. Martinez also does not allege McCord used improper customs or policies that resulted in deliberate indifference to constitutional rights. However, Martinez does allege a causal connection in that McCord knew that the SWAT team would act unlawfully and failed to stop them (Pls.' Resp. Br. to McCord 17). This assertion is largely based on the plaintiffs' belief that "McCord knew that Plaintiffs were not armed and dangerous," yet he procured the assistance of the SWAT team thereby ensuring entry force would be excessive. (*Id.* at 18.) There is evidence that McCord conducted the briefing prior to the raid of the mobile homes. (Whittle Decl. ¶ 5.) If McCord directed his subordinates to act unlawfully[8] during this briefing, or at any other stage of the search operation, he could be subject to supervisory liability.

The facts surrounding the briefing are exclusively within the knowledge and control of the defendants. Therefore, the plaintiffs have made allegations which, if supported by evidence obtained after discovery, could form the basis of valid claims under § 1983 and

---

[8] For instance, federal law requires an officer to knock on the door and announce his presence before using force to enter a home. *See* 18 U.S.C. § 3109. Significantly, for the purposes of triggering the application of the federal "no-knock" statute, the plaintiffs have alleged the involvement of the United States Drug Enforcement Agency in the search operation. (Third Am. Compl. ¶ 11.) Furthermore, "it is clear that the Fourth Amendment requires an inquiry into the reasonableness of a no-knock search even if there is no federal involvement triggering section 3109." *United States v. Scroggins*, 361 F.3d 1075, 1080 (8th Cir. 2004); *see also United States v. Segura-Baltazar*, 448 F.3d 1281, 1290 n.4 (11th Cir. 2006) (citing *Scroggins* for the proposition that a section 3109 analysis is identical to a Fourth Amendment analysis). In addition, Alabama law permits an officer executing a search warrant to break open any door or window of a house but only "if after notice of his authority and purpose he is refused admittance." Ala. Code § 15-5-9 (1975).

could establish personal or supervisory liability for McCord. The court does not expect parties to allege facts of which only the opposing party has knowledge and control.[9] Accordingly, the court finds that McCord is not entitled to qualified immunity at the pre-discovery stage of the proceedings, and his motion for summary judgment as to Counts One (unlawful entry), Two (unlawful search and seizure), and Three (excessive force) is due to be denied.

### 2.    Williamson

Although Williamson was not present at the initial entry of the residence at 43 Pitts Drive, he did personally enter the residence and conduct a search. The plaintiffs allege that he "ransacked" the home and caused damage. As explained above, Rule 56(f) prevents the court from reaching a final judgment on the motion for summary judgment at this time with respect to two of the § 1983 claims against Williamson. Thus, at this stage of the litigation,

---

[9] The court is mindful of the broad scope of qualified immunity and frequently faces pre-discovery motions to dismiss in § 1983 cases involving law enforcement actions. In exercise of its discretion, the court finds the need for discovery of matters peculiarly within the knowledge of the defendants outweighs the burden of discovery, particularly when subsequent motions for summary judgment will be available to the defendants to test the issue of qualified immunity post-discovery, and especially when a defendant, like Williamson, is not entitled to judgment as to all claims in any event, and thus discovery is inevitable. As the Eleventh Circuit has acknowledged in dicta, it is important to "purs[ue] discovery to a reasonable extent so as to permit appropriate factual showings [because] anything less may result in grants of summary judgment solely because of inadequate discovery." *Rich v. Dollar*, 841 F.2d 1558, 1566 n.8 (11th Cir. 1988). With that in mind, however, the court is vested with "broad discretion to tailor discovery narrowly and to dictate the sequence of discovery," and expects to hear motions to "limit the time, place, and manner of discovery, or even bar discovery altogether on certain subjects," *Crawford-El v. Britton*, 523 U.S. 574, 598-600, so as to "'protect[ ] the substance of the qualified immunity defense.'" *Harbert*, 157 F.3d at 1280 (quoting *Crawford-El*, 523 U.S. at 597).

his summary judgment motion as to Count One (unlawful entry) and Count Two (unlawful search and seizure) is due to be denied because discovery is needed to determine essential facts.

The excessive force claim in Count Three, however, requires no fact finding because it fails as a matter of law as to Williamson.  The excessive force claim is based on the actions of the SWAT team as they initially entered the residence and forced the plaintiffs onto the floor at gunpoint.  (Third Am. Compl. ¶¶ 64-76.)  There are no allegations that Williamson had any supervisory authority over the SWAT team or that he played any role in conducting the briefing.  It is undisputed that Williamson was not among those who initially entered the residence.  There is no allegation that Williamson personally touched the plaintiffs at all.  Therefore, the excessive force claim fails as to Williamson and his summary judgment motion is due to be granted as to Count Three (excessive force).

**C.    *Counts Four and Five - Civil Rights Conspiracy***

Although the plaintiffs originally brought Counts Four and Five, alleging violations of 42 U.S.C. § 1985 and § 1986, against both defendants, they now concede these two claims as to McCord.  (Doc. # 70, at 20.)  As for Williamson, the plaintiffs allege that he conspired with other officers to deprive Martinez of her civil rights in violation of 42 U.S.C. § 1985 and that he had knowledge of the conspiracy, had the power to prevent it, and failed to do so in violation of 42 U.S.C. § 1986.  (Third Am. Compl. ¶¶ 77-87.)  No facts are alleged regarding any communication between Williamson and any other defendant or the SWAT

team.  No facts are alleged that would support either a conspiracy or knowledge of a conspiracy by Williamson to deprive the plaintiffs of any constitutional right.

"The elements of a cause of action under section 1985(3) are '(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.'" *Lucero v. Operation Rescue of Birmingham*, 954 F.2d 624, 627-28 (11th Cir. 1992) (quoting *United Bhd. of Carpenters & Joiners of Am., Local 610 v. Scott*, 463 U.S. 825, 828-29 (1983)).

"More specifically, the second element requires a showing of 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" *Id*. (quoting *Scott*, 463 U.S. at 829).  The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all.  The plaintiffs' complaint is devoid of any allegations of race-based, or other protected class-based, denial of equal protection of the laws.  The plaintiffs' complaint does not allege that any racial or other invidiously discriminatory animus motivated Williamson's allegedly unconstitutional actions.  Hence, the §1985 claim of Count Four fails.

Count Five is a claim for failure to prevent a violation of civil rights pursuant to 42 U.S.C. § 1986.  Section 1986 provides a cause of action against anyone who has knowledge of a § 1985 conspiracy and fails to prevent a violation of civil rights pursuant to

16

the conspiracy. *Park v. City of Atlanta*, 120 F.3d 1157, 1159-60 (11th Cir. 1997). Because the plaintiffs failed to allege or establish the essential elements of a § 1985 conspiracy, their derivative § 1986 claim necessarily fails. *Id.* at 1160 (agreeing "with the district court that § 1986 requires a violation of § 1985"). Therefore, both defendants' motions for summary judgment as to Counts Four and Five are due to be granted.

**D.    *State Tort Claims – Counts Six Through Eleven***

The plaintiffs bring state tort claims of trespass, assault and battery, invasion of privacy, intentional infliction of emotional distress, conversion, and false arrest or false imprisonment against the defendants. (Third Am. Compl. ¶¶ 88-120.) Both defendants plead immunity defenses to all tort claims.

### 1.    <u>McCord and State Immunity</u>

The Alabama Constitution provides "[t]hat the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. art. I, § 14. The Alabama Supreme Court has held that a sheriff is an officer of the state, not the county, and as such is immune from suits stemming from the execution of his duties.[10] *Parker v. Amerson*, 519 So. 2d 442,

---

[10]  The only exceptions to state immunity for sheriffs are for actions brought:

(1) to compel him to perform his legal duties; (2) to compel him to perform ministerial acts; (3) to enjoin him from enforcing unconstitutional laws; (4) to enjoin him from acting in bad faith, fraudulently, beyond his authority, or under mistaken interpretation of the law, or (5) to seek construction of a statute under the Declaratory Judgment Act.

*Parker*, 519 So. 2d at 443.

17

445 (Ala. 1987); *see also McMillian v. Johnson*, 101 F.3d 1363, 1365 (11th Cir. 1996) (finding that "under Alabama law, a claim against an Alabama sheriff in his individual capacity is barred by the doctrine of sovereign immunity"). As an "alter ego" of the sheriff, the acts of a sheriff's deputy are considered "the acts of the sheriff." *Mosely v. Kennedy*, 17 So. 2d 536, 537 (Ala. 1944). As a result, sheriff's deputies enjoy the same state immunity that is granted to sheriffs. *See Hereford v. Jefferson County*, 586 So. 2d 209, 210 (Ala. 1991); *see also Alexander v. Hatfield*, 652 So. 2d 1142, 1144 (Ala. 1994) ("We have also held that deputy sheriffs are immune from suit to the same extent as sheriffs.").

Here, there is no dispute that McCord's acts during the course of a drug raid were performed in the course and scope of his employment as a deputy sheriff. (*See* Doc. # 70, at 12.) Furthermore, none of five exceptions to state immunity for sheriffs and their deputies are applicable. Therefore, as an officer of the state, McCord is entitled to state immunity, and his motion for summary judgment is due to be granted as to the state tort claims contained in Counts Six through Eleven.

### 2.   Williamson and State-Agent Immunity

Alabama extends immunity[11] to law enforcement officers from tort claims when the

_____

[11]  Alabama's State-agent immunity statute provides in part:

Every peace officer, except constables, who is employed or appointed pursuant to the Constitution or statutes of this state, whether appointed or employed as such peace officer by the state or a county or municipality thereof, or by an agency or institution, corporate or otherwise, created pursuant to the Constitution or laws of this state and authorized by the Constitution or laws to appoint or employ police officers or other peace officers, and whose duties prescribed by law, or by the lawful terms of their

conduct underlying the claims is based on the agent "exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons, or serving as peace officers under circumstances entitling such officers to immunity pursuant to § 6-5-338(a)." *Hollis v. City of Brighton*, 950 So. 2d 300, 309 (Ala. 2006) (emphasis omitted). A defendant is immune if he "(1) is a 'peace officer,' (2) is performing 'law enforcement duties,' and (3) is exercising judgment or discretion." *Howard v. City of Atmore*, 887 So. 2d 201, 204 (Ala. 2003). The officer bears the burden of demonstrating the plaintiffs' claims arise from a function that would entitle him to immunity. *Ex parte Randall*, 971 So. 2d 652, 662 (Ala. 2007). Once the officer has shown this, the burden shifts to the plaintiff, who may rebut the immunity if he shows the police officer "acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority[, or under a mistaken interpretation of the law]." *Id.* at 662-63.

The text of the statute describes a peace officer as, among other things, one "who is empowered by the laws of this state to execute warrants." Ala. Code § 6-5-338(a). As a

---

employment or appointment, include the enforcement of, or the investigation and reporting of violations of, the criminal laws of this state, and who is empowered by the laws of this state to execute warrants, to arrest and to take into custody persons who violate, or who are lawfully charged by warrant, indictment, or other lawful process, with violations of, the criminal laws of this state, shall at all times be deemed to be officers of this state, and as such, shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties.

Ala. Code § 6-5-338(a) (1975).

lieutenant and investigator for a municipal police department during the course of executing a search warrant, Williamson qualifies as a peace officer. Furthermore, the execution of a search warrant and search of a residence are typical law enforcement duties that require discretion. Williamson meets his burden because he was a peace officer searching for evidence under a search warrant, which is an exercise of judgment in the enforcement of the criminal laws of the State. *Moore v. Adams*, 754 So. 2d 630, 632 (Ala. 1999) (finding "the execution of a valid search warrant [is] a discretionary function").

The plaintiffs have the burden to rebut Williamson's immunity by showing he acted willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law – many concepts which would be peculiarly within the knowledge of the officer. As explained above, due to the lack of discovery, Rule 56(f) prevents the court from reaching a judgment on the motion for summary judgment at this time with respect to Williamson for three of the tort claims. This is because discovery could lead to evidence supporting the plaintiffs' allegations that Williamson did act willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law. Therefore, Williamson's motion for summary judgment is due to be denied with respect to Count Six (trespass), Count Eight (invasion of privacy), Count Ten (conversion), and Count Eleven (false arrest/false imprisonment).

Despite Rule 56(f), there are two tort claims against Williamson that fail as a matter of law, and further discovery on these claims would be pointless. Count Seven alleges the

20

tort of assault and battery.  (Third Am. Compl. ¶¶ 95-98.)  The complaint states that "the defendants touched Ms. Martinez in rudeness, in anger, or in a hostile manner, by touching her person and pointing a firearm at her head."  (*Id.* ¶ 95.)  Despite lumping all defendants into this claim, earlier in the complaint the plaintiffs admit that Williamson was not part of the initial, violent entry of their home during which time the alleged assault occurred and firearms were drawn.  (*Id.* ¶¶ 20-21.)  The complaint states that "*[f]ollowing the assault* on Plaintiffs' (sic) and their home, the Ninja-clad officers left, to be replaced by . . . Williamson and other, presently unknown, officers."  (*Id.*)  It is clear the assault and battery claim is directed at the officers who initially entered the plaintiffs' home and not the officers who subsequently searched the home.  Because the plaintiffs acknowledge Williamson was not one of the initial officers, and they do not allege that he ever touched the plaintiffs, the assault and battery claim against him fails.

Count Nine asserts a claim for intentional infliction of emotional distress (*i.e.*, outrage) against Williamson.  However, in Alabama, the tort of outrage is only recognized in three areas: "(1) wrongful conduct within the context of family burials; (2) an insurance agent's coercing an insured into settling an insurance claim; and (3) egregious sexual harassment."  *Stabler v. City of Mobile*, 844 So. 2d 555, 560 (Ala. 2002).  None of these situations is remotely applicable to the situation at hand, and thus the plaintiffs have not alleged a viable claim of outrage.  Therefore, Williamson's summary judgment motion is due to be granted as to both Count Seven (assault and battery) and Count Nine (outrage).

## V.  CONCLUSION

For the reasons set forth above, it is ORDERED that:

1.      Defendant McCord's Motion to Dismiss (Doc. # 62) is DENIED;

2.      Defendant McCord's Motion for Summary Judgment (Doc. # 62) is

GRANTED in part and DENIED in part as follows:

      a.      DENIED as to Counts One, Two, and Three;

      b.      GRANTED as to Counts Four through Eleven.

3.      Defendant Williamson's Motion to Dismiss (Doc. # 83) is DENIED;

4.      Defendant Williamson's Motion for Summary Judgment (Doc. # 83) is

GRANTED in part and DENIED in part as follows:

      a.      DENIED as to Counts One, Two, Six, Eight, Ten, and Eleven;

      b.      GRANTED as to Counts Three, Four, Five, Seven, and Nine.

Therefore, Counts One, Two, and Three remain against McCord, and Counts One, Two, Six, Eight, Ten, and Eleven remain against Williamson, and the parties shall proceed with their Rule 26 obligations.

DONE this 8th day of May, 2008.

                /s/   W.  Keith Watkins
                UNITED STATES DISTRICT JUDGE